UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File Numbers 21-CR-73 (DWF) (D. Minn.)
District Court File No. 19-CR-20029 (C.D. Illinois)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | )    **PLEA AGREEMENT AND** |
| Plaintiff, | )    **SENTENCING STIPULATIONS** |
| | ) |
| v. | ) |
| | ) |
| WESLEY D. JOHNSON, | ) |
| | ) |
| Defendant. | ) |

The United States of America, by and through its attorneys: W. Anders Folk, Acting United States Attorney for the District of Minnesota, and Assistant United States Attorneys Allison K. Ethen and Timothy C. Rank; Douglas J. Quivey, Acting United States Attorney for the Central District of Illinois, and Assistant United States Attorney Eugene L. Miller; Assistant Attorney General for Civil Rights Eric S. Dreiband and Trial Attorney Timothy Visser; and Defendant Wesley D. Johnson, personally and through his attorney, Aaron Morrison; have agreed to resolve this case on the terms and conditions set forth below. This plea agreement binds only Defendant, the United States Attorney's Offices for the District of Minnesota and the Central District of Illinois, and the Civil Rights Division of the United States Department of Justice. This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1. **Charges.** Pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B), Defendant will enter a plea of guilty to Counts One and Two of the two-count Indictment filed in the United States District Court for the Central District of Illinois on May 2, 2018

SCANNED
JUN 15 2021
U.S. DISTRICT COURT ST. PAUL

*United States v. Wesley D. Johnson*, 21-CR-73 (DWF) (D. Minn.), 19-CR-20029 (C.D. Illinois)
Plea Agreement

(the "Illinois Indictment"). The Illinois Indictment has been transferred to Minnesota for entry of guilty pleas and sentencing pursuant to Federal Rule of Criminal Procedure 20. Count One of the indictment charges Defendant with Conspiracy to Interfere with Commerce by Threats and Violence in violation of Title 18, United States Code, Sections 1951 and 2. Count Two of the indictment charges Defendant with Attempted Arson in violation of Title 18, United States Code, Sections 844(i) and 2. Pursuant to Rule 11(c)(1)(B), if the Court does not accept the recommendations of the parties as set forth below, Defendant understands that he does not have the right to withdraw his plea of guilty.

2.  **Factual Basis.**

The following facts are a sufficient basis for the pleas of guilty being entered. The parties do not claim that this plea agreement and sentencing stipulations contains all the facts of this case. Defendant agrees that he will plead guilty because he is in fact guilty. In pleading guilty, Defendant stipulates and agrees that the United States could prove the following to a jury beyond a reasonable doubt:

In the fall of 2017, Defendant Wesley D. Johnson joined a militia group based in Clarence, Ford County, in the Central District of Illinois. The group had been formed by Michael Hari in the summer of 2017. Initially, Hari called the group the "Patriot Freedom Fighters," but later changed it to the "White Rabbit Militia." Hari was the group's leader, and he assigned different military ranks to some of its members. Hari designated himself "Captain," and he assigned the rank of Sergeant to Michael McWhorter and Corporal to Joe Morris. At various times there were as many as seven people involved in the group, including individuals both known and unknown to Defendant (collectively, "the

conspirators"). Beginning in August of 2017, the conspirators began engaging in repeated criminal acts of violence, which Hari referred to as "jobs." As part of their militia activities, Michael Hari obtained materials used to make explosive, destructive, and incendiary devices, and provided weapons, tactical equipment, and uniforms to the conspirators. Defendant knowingly joined the conspiracy around September of 2017.

On or about November 7, 2017, as part of the conspiracy, Johnson accompanied Hari, McWhorter, and Morris to the Women's Health Practice located in Champaign, Champaign County, in the Central District of Illinois. At the time, the Women's Health Practice was engaged in an activity affecting interstate commerce and the building was used in interstate commerce. Namely, the Women's Health Practice provided medical services at that location, purchased and distributed medical supplies, some of which had moved in interstate commerce, and processed health insurance payments, many of which came from health insurance carriers located outside Illinois, for medical services provided at that location.

Shortly before November 7, 2017, Defendant observed Hari and others testing thermite, behind a building in Clarence, Illinois. When thermite is ignited, it burns at an extremely high temperature. On November 7, 2017, Defendant, Morris, and McWhorter met at a building in Clarence, Illinois that was used by Hari as an office. Defendant, Hari, Morris, and McWhorter drove to Champaign in a vehicle rented by Hari for the purpose of damaging the building by means of fire using an incendiary device constructed by Hari. There were gloves, masks, and firearms in the vehicle. After parking near the Women's Health Practice, Hari assigned roles in the arson. Defendant told federal law enforcement

that he was a lookout at the Women's Health Practice attempted arson. Morris got out of the vehicle, went to the Women's Health Practice, where he broke a window, placed an incendiary device containing thermite in the Women's Health Practice, and lit a strip of magnesium that was being used as a fuse. The device did not ignite. On the morning of November 7, 2017, a receptionist at the Women's Health Practice found the unignited device on the sill of the broken window and called law enforcement officers. Law enforcement determined the device to be a length of PVC pipe, capped at one end, and covered in duct tape at the other end, containing an incendiary powder mixture, one of whose components was thermite. The device also contained a fuse, which was a strip of magnesium mental, which could be used to ignite the incendiary mixture.

On or about December 4, 2017, as part of the conspiracy, several conspirators traveled to a WalMart store, which was engaged in interstate commerce and located in Watseka, Iroquois County, Illinois. Morris entered the WalMart store armed with what appeared to be a dangerous weapon, confronted a cashier, and robbed approximately $1,500 from the WalMart store. Although this incident was in furtherance of the conspiracy, Johnson was not present on this occasion.

On or about December 16, 2017, as part of the conspiracy, Johnson and other conspirators traveled from Clarence, Illinois, to a residence in Ambia, Indiana, for the purpose of robbing an individual they believed to be involved in interstate commerce, namely, drug trafficking. The conspirators wore their "White Rabbit" uniforms and were each armed with firearms. Pretending to be law enforcement officers executing a search warrant, the conspirators forced entry to the residence. The conspirators handcuffed and

zip-tied the residents, causing injury to the wrists of one of the zip-tied individuals. After searching for cash and drugs, but not finding any, the conspirators left the residence and returned to Clarence, Illinois.

On or about December 17, 2017, as part of the conspiracy, several conspirators, including Johnson, traveled from Clarence, Illinois, to a WalMart store, which was engaged in interstate commerce and located in Mt. Vernon, Illinois. Several conspirators entered the store, confronted a cashier, and attempted to rob the store. When a security guard was notified, the conspirators fled the store, met up with Johnson and the other conspirators, and returned to Clarence, Illinois.

On or about January 17, 2018, as part of the conspiracy, Hari, McWhorter, and Morris traveled from Clarence, Illinois, to near Effingham, Illinois, where they attempted to sabotage railroad tracks used in interstate and foreign commerce, and owned by the Canadian National Railway, through the use of an incendiary device. Following the attempted sabotage, Hari sent an extortionate demand via anonymous e-mail to the Canadian National Railway threatening that that there would be more damage inflicted by the conspirators to Canadian National Railway railroad tracks if the railroad did not pay the conspirators approximately $190,000 in cryptocurrency. Although this incident was in furtherance of the conspiracy, Johnson was not present on this occasion.

On or about February 18, 2018, Hari, McWhorter, and Morris planted bomb-making materials, including a pipe bomb, on the property of J.O. in Clarence, Illinois, to attempt to get J.O. in trouble with law enforcement prior to a court hearing in Ford County where Hari faced criminal charges for allegedly assaulting J.O. in June of 2017. Although this

incident was in furtherance of the conspiracy, Johnson was not present on this occasion. On February 19, 2018, Hari e-mailed an anonymous "tip" to the Bureau of Alcohol, Tobacco, Firearms and Explosives' (ATF) that explosive devices were contained in a suitcase and gray bag in a shed at the back of J.O.'s property. On the same day, the Ford County Sheriff's Department, University of Illinois Police Department, and the FBI responded to the address determined to be J.O.'s residence. Agents conducted a consent search of the residence and found multiple explosive devices, including a pipe bomb attached to a small green propane tank, in a shed at the back of J.O.'s residence, just as Hari's tip had indicated.

Following the search of J.O.'s residence, the conspirators became concerned that the FBI might search the militia group's office and seize their weapons, including the machineguns. Therefore, around February 20, 2018, Hari and McWhorter moved the weapons, including the machinegun, from the office safe to the residence of another member of the militia group located in Clarence. Although this incident was in furtherance of the conspiracy, Johnson was not involved in moving the weapons.

On February 27, 2018, FBI agents conducted a consensual search of the residence in Clarence where the machinegun had been relocated. During the search, the FBI agents found four shotguns and four assault rifles (ARs) inside a camouflage bag. More specifically, the FBI agents located (1) a .223/5.56 caliber AR-style platform rifle with no serial number; (2) a .223 caliber AR-style platform rifle with a short-barrel and no serial number; (3) a .223/5.56 AR-style platform rifle with a mini-barrel and no serial number; (4) an M16 AR-style platform rifle with no serial number; (5) a Remington 11-87 Super

Mag, camouflage, 12 gauge shotgun, serial number SM039535; (6) an Ithaca Gun Company, Deerslayer 12 gauge shotgun, Model 37 Feather Lite, serial number 862123; (7) a Stoeger P3000 12 gauge shotgun, serial number 1640756; and (8) a Mossberg 12 gauge shotgun, Model 88 Maverick, serial number MV73194X.

The FBI also recovered a black hard-gun case, a green plate carrier with soft armor, and a bandoleer containing multiple 12-gauge bullets. An ATF Special Agent determined that three of the four seized ARs field-tested to be fully automatic and met the definition of a "machinegun," as defined by 18 U.S.C. § 921(a)(23) and 26 U.S.C. § 5845(b).

The same date the FBI seized the conspirators' machineguns, Hari, McWhorter, Morris, and Mack fled Clarence, Illinois, on foot and stayed at the residences of local acquaintances. While they were "on the run," the conspirators made a video where they wore masks and espoused their "White Rabbit" philosophy. Although this incident was in furtherance of the conspiracy, Johnson did not participate.

3.  **Venue.** Defendant admits and acknowledges that Counts 1 and 2 of the Illinois Indictment have been transferred from the Central District of Illinois to the District of Minnesota for guilty pleas and imposition of sentence pursuant to Federal Rule of Criminal Procedure 20. Defendant further admits and acknowledges that this Rule 20 transfer was validly and properly done, and further, was done at Defendant's request. Defendant hereby waives any and all objections he may have to the transfer of Counts 1 and 2 of the Illinois Indictment from the Central District of Illinois to the District of Minnesota.

*United States v. Wesley D. Johnson*, 21-CR-73 (DWF) (D. Minn.), 19-CR-20029 (C.D. Illinois)
Plea Agreement

4.   **Waiver of Pretrial Motions.**  Defendant understands that he has certain rights to file pretrial motions in this case. As part of this plea agreement, and based upon the concessions of the United States in this plea agreement, Defendant knowingly, willingly, and voluntarily agrees not to file any pretrial motions.

5.   **Statutory Maximum and Minimum Penalties.**  The parties agree that Counts 1 and 2 of the Illinois Indictment are all Class C felonies, 18 U.S.C. § 3559(a)(3), and carry the following maximum statutory penalties and mandatory minimum penalty (for Count 2) upon conviction:

**Count 1 of the Illinois Indictment, Conspiracy to Interfere with Commerce by Threats and Violence.**

 a. A maximum term of imprisonment of not more than 20 years, 18 U.S.C. § 1951(a);

 b. A maximum supervised release term of not more than three years, 18 U.S.C. § 3583(b)(2);

 c. A maximum fine of not more than $250,000, 18 U.S.C. § 3571(b)(3); and

 d. A mandatory special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

**Count 2 of the Illinois Indictment, Attempted Arson.**

 a. A mandatory minimum term of imprisonment of not less than five years, 18 U.S.C. § 844(i);

 b. A maximum term of imprisonment of not more than 20 years;

 c. A maximum supervised release term of not more than three years, 18 U.S.C. § 3583(b)(2);

 d. A maximum fine of not more than $250,000, 18 U.S.C. § 3571(b)(3); and

  e. A mandatory special assessment of $100, 18 U.S.C. § 3013(a)(2)(A).

6.  **Revocation of Supervised Release.** Defendant understands that if he violates any condition of supervised release, he could be sentenced to an additional term of imprisonment of up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583, and with no credit for any time previously served on supervised release.

7.  **Guidelines Calculations.** The parties acknowledge that Defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq. Nothing in this plea agreement should be construed to limit either party from presenting to the Court at the time of sentencing any and all evidence which they think relevant to the Court's determination of a just sentence. The parties also acknowledge that the Court will consider the United States Sentencing Guidelines in determining the appropriate sentence. Defendant understands that, based on a review of his past criminal convictions, it is possible that he will be found to be a Career Offender under U.S.S.G. §4B1.1. Defendant's actual criminal history and related status will be determined by the Court based on the information presented in the Presentence Report and by the parties at the time of sentencing. The parties acknowledge that Defendant's Adjusted Offense Level could be as high as 32 if he is determined to be a Career Offender under U.S.S.G. §4B1.1. This would result in a guidelines range of 210-262 months in prison; if Defendant is given a three-level reduction for acceptance of responsibility, his guidelines range could be as high as 151-188 months in prison.

8.  **Acceptance of Responsibility.** The government agrees to recommend that Defendant be granted a three-level reduction for acceptance of responsibility and to make

*United States v. Wesley D. Johnson*, 21-CR-73 (DWF) (D. Minn.), 19-CR-20029 (C.D. Illinois)
Plea Agreement

any appropriate motions to the Court needed to effectuate that reduction. However, Defendant understands and agrees that this recommendation is conditioned upon the following: (i) Defendant testifies truthfully during the change of plea and sentencing hearings, (ii) Defendant provides complete and truthful information to the Probation Office in the process of preparing the report of pre-sentence investigation, and (iii) Defendant commits no further acts inconsistent with acceptance of responsibility. U.S.S.G. §3E1.1.

9. **Discretion of the Court.** The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable Guidelines factors and the applicable criminal history category. The Court may also depart from the applicable Guidelines range. Neither party may withdraw from this agreement should the Court determine that the applicable Guidelines calculations or Defendant's criminal history category are different from that stated above. Defendant will be sentenced pursuant to the Court's determinations.

10. **Parties can Argue Criminal History and Application of the Guidelines.** Both parties are free to argue to the Court for the sentence they believe to be just and appropriate, and to make such motions for variance and/or departure as will result in the sentence they believe to be just and appropriate. The parties also can make arguments as to the proper calculation of Defendant's criminal history, including whether he should be considered a Career Offender under U.S.S.G. §4B1.1, and the proper application and calculation of the Sentencing Guidelines.

*United States v. Wesley D. Johnson*, 21-CR-73 (DWF) (D. Minn.), 19-CR-20029 (C.D. Illinois)
Plea Agreement

11. **Special Assessment.** The Guidelines require payment of a special assessment in the amount of $100 for each felony count of which Defendant is convicted. U.S.S.G. § 5E1.3. Defendant agrees that his special assessment of $200 becomes due and payable at sentencing.

12. **Restitution.** Defendant understands and agrees that the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, applies to his offenses of conviction, and that the sentencing court will be required to order Defendant to pay restitution to the victims of his crimes.

13. **Waiver of Appeal and Collateral Attack.** Defendant understands that 18 U.S.C. § 3742 affords Defendant the right to appeal the sentence imposed in this case. Acknowledging this right, and in exchange for the concessions made by the United States in this plea agreement, Defendant hereby waives any rights conferred by 18 U.S.C. § 3742 to appeal Defendant's sentence on any ground. In addition, Defendant expressly waives the right to petition under 28 U.S.C. § 2255, except for claims based on ineffective assistance of counsel. Defendant has discussed these rights with his attorney. Defendant understands the rights being waived, and he waives these rights knowingly, intelligently, and voluntarily.

14. **Forfeiture.** Defendant agrees that he will forfeit to the United States any right, title, and interest he may have in any firearms used in the commission of the offenses to which he is pleading guilty.

15. **Complete Agreement.** This plea agreement and sentencing stipulations, together with any agreement signed by the Parties before the entry of a plea, is the entire

*United States v. Wesley D. Johnson*, 21-CR-73 (DWF) (D. Minn.), 19-CR-20029 (C.D. Illinois)
Plea Agreement

agreement and understanding between the United States and Defendant. There are no other agreements, promises, representations, or understandings.

Date: 6/15/2021

W. ANDERS FOLK
Acting United States Attorney

BY: *(signed)*
TIMOTHY C. RANK
ALLISON K. ETHEN
Assistant United States Attorneys

Date: 6/15/2021

*(signed)* Wesley D. Johnson
WESLEY D. JOHNSON
Defendant

Date: 6-15-2021

*(signed)*
AARON MORRISON, Esq.
Counsel for Mr. Johnson

12