UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
District Court File Numbers 21-CR-73 (DWF) (D. Minn.)
District Court File No. 19-CR-20029 (C.D. Illinois)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | **POSITION OF THE** |
| Plaintiff, ) | **GOVERNMENT WITH** |
| ) | **RESPECT TO** |
| v. ) | **SENTENCING** |
| ) | |
| WESLEY D. JOHNSON, ) | |
| ) | |
| Defendant. ) | |

The United States of America, by and through its attorneys, Charles J. Kovats, Jr., Acting United States Attorney for the District of Minnesota, and Assistant United States Attorneys Allison K. Ethen and Timothy C. Rank, respectfully submits its Sentencing Position in this case.

I.  **INTRODUCTION**

On June 15, 2021, Defendant Wesley D. Johnson pleaded guilty to both counts of the Indictment filed in the United States District Court for the Central District of Illinois on April 2, 2019 (the "Illinois Indictment"). The Illinois Indictment was transferred to Minnesota for entry of guilty pleas and sentencing pursuant to Federal Rule of Criminal Procedure 20. Count One of the Indictment charged Defendant with Conspiracy to Interfere with Commerce by Threats and Violence in violation of Title 18, United States Code, Sections 1951 and 2. Count Two of the Indictment charged Defendant with Attempted Arson in violation of Title 18, United States Code, Sections 844(i) and 2.

## II.     FACTS OF THE CASE

In September 2017, Johnson joined a militia group based in Clarence, Illinois. The group had been formed by Michael Hari in the summer of 2017, and he later named it the "White Rabbit Militia." Hari was the leader of the militia, and he directed all of its criminal activities. In August of 2017, three members of the White Rabbit Militia (Hari, Joe Morris, and Michael McWhorter) participated in the bombing and arson of the Dar al-Farooq mosque in Bloomington, Minnesota. Johnson had not joined the group at that time and was not aware of the attack on Dar al-Farooq at any point during his participation in the conspiracy.

In the fall of 2017, Johnson met Hari at a party and Hari offered Johnson work doing security and consulting work for "the government." Similar to the representations Hari made to Michael McWhorter, Hari promised Johnson large sums of money in exchange for completing security and consulting jobs. In November of 2017, Hari asked Johnson to participate in the first job. On or about November 6, Johnson went to a building in Clarence, Illinois that Johnson learned was used by Hari as an office and headquarters of his militia group. When Johnson arrived, he observed Hari, McWhorter, and Morris burning thermite behind the building. Thermite is a chemical compound which, when ignited, burns at an extremely high temperature.

In the early morning hours of November 7, 2017, Hari drove Johnson, Morris, and McWhorter from Clarence to Champaign, Illinois, in a truck rented by Hari. Prior to leaving Clarence, Hari advised Johnson, Morris, and McWhorter that they were going to do a job, and he would provide details on the drive. They wore military clothing, including

balaclava masks and gloves, and equipped themselves with firearms, a cell phone jammer, a police scanner, walkie-talkies, a hammer, and a PVC pipe containing thermite. On the drive, Hari advised the group that they were going to burn down an abortion clinic.

Hari drove to an area by the Women's Health Practice, a clinic that provided a variety of women's medical services in Champaign, Illinois, and he parked the truck. Hari then assigned roles to the people in the truck. He directed Johnson and McWhorter to act as lookouts, and he told Morris to break a window, light the thermite device, and throw it inside of the building. Morris got out, carrying the hammer and thermite device, and walked toward the clinic, while Hari, McWhorter, and Johnson waited in the truck a short distance away. A few minutes later, Morris returned to the vehicle. When Morris got back in the truck, Hari asked Morris if everything was alright and Morris replied, "It's done." Hari then drove them all back to Clarence.

That morning, when the clinic opened, a Women's Health Practice receptionist found the unignited device on the sill of a broken window and called 911. Law enforcement determined the device to be a length of PVC pipe, capped at one end, and covered in duct tape at the other end, containing thermite. The device also contained a fuse, which was a strip of magnesium mental, which could be used to ignite the incendiary mixture. The device was either never lit or it failed to ignite for some other reason.

After the attempted arson of the Women's Health Practice, the White Rabbit Militia engaged in several other criminal acts. Johnson, however, participated in only two: (1) an armed home invasion robbery in Ambia, Illinois, and (2) an attempted robbery of a Walmart store in Mt. Vernon, Illinois.

On or about December 16, 2017, as part of the conspiracy, Johnson and other conspirators, including Hari, McWhorter, and Morris, traveled from Clarence, Illinois, to a residence in Ambia, Indiana, for the purpose of robbing an individual they believed to be a drug dealer. Hari again told Johnson to act as a lookout while Hari, Morris, and McWhorter, forced entry into the residence by pretending to be law enforcement officers executing a search warrant and handcuffed and zip-tied the residents. During this confrontation, Hari, Morris, and McWhorter wielded assault rifles, two of which had been converted to machine guns. After searching for cash and drugs, but not finding any, they left the residence and returned to Clarence.

The next day, December 17, 2017, as part of the conspiracy, several conspirators, including Johnson, traveled from Clarence to a Walmart store located in Mt. Vernon, Illinois, to commit a robbery. Three of the conspirators entered the Walmart, confronted a cashier, and attempted to rob the store while Johnson waited in the parking lot. When a security guard was notified, the conspirators fled, met up with Johnson and the other conspirators, and returned to Clarence.

In May of 2018, Johnson was interviewed by FBI Task Force Officer Barbara Robbins about his involvement with Hari and the White Rabbit Militia. During the interview, Johnson lied and claimed that he had no knowledge of the attack on the Women's Health Practice or any other criminal activity involving Hari, Morris, or McWhorter. Johnson was interviewed again in September of 2018, this time by FBI Special Agent Joel Smith, and he again lied about his involvement in the conspiracy.

In January 2019, Johnson once again was interviewed by Special Agent Smith, but this time admitted that he had lied during the previous interviews. Johnson also provided detailed, truthful information about the Women's Health Practice attack, the Ambia home invasion, and the Mt. Vernon Walmart robbery. Over the next several months, Johnson met with Agent Smith on multiple occasions and continued to provide information.

In April of 2019, Johnson was arrested on the Illinois Indictment. He was detained in Illinois from April of 2019 until January of 2020, when he was transferred to the Sherburne County Jail, prior to Hari's first scheduled trial date. Since that time, he has been detained in Sherburne County Jail. Johnson has met with prosecutors multiple times in preparation for trial, including lengthy meetings in February, October, and November 2020. Although the government ultimately decided not to call Johnson to testify, he was listed on the government's witness list, his name was disclosed to Hari's defense counsel as a witness, and his interview memoranda were provided. The government believed, and continues to believe, that Johnson was cooperative and forthcoming, and that his testimony would have been helpful. After Hari's trial and conviction in Minnesota, Johnson was prepared to testify in Hari's trial in the Central District of Illinois. Johnson's name was disclosed as a witness (and his interview memoranda provided) to the defense in advance of the scheduled trial date in Illinois. Hari pleaded guilty to those charges on February 9, 2022.

### III.     PRESENTENCE INVESTIGATION REPORT

The United States has no objections to the factual assertions or the guidelines calculations in the PSR. The PSR calculates an adjusted offense level of 32, resulting in a

total offense level of 29 after acceptance of responsibility. PSR ¶¶ 85, 88. Based on a criminal history category of VI, Johnson's guidelines range is 151-188 months in prison. *Id.* ¶ 159.

## IV. ARGUMENT

Section 3553(a) requires the Court to analyze a number of factors in determining an appropriate sentence, including, "the nature and circumstances of the offense," and "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The crimes Johnson participated in were serious. If the attack on the Women's Health Practice had been successful, it would have burned down the building. The attack, however, was intended not just to destroy a building, but also to terrorize the people who worked there and the patients who use the clinic for health services. Although Johnson did not know the Hari's intentions at the time he got into the truck for the drive from Clarence to Champaign, he certainly knew them by the time they arrived. Johnson could have reported the attack to law enforcement at some point afterward, but he did not.

Instead, he chose to join Hari and the other in two other robberies. And while Johnson was a relatively passive participant in the Ambia home invasion, he was aware that it carried the potential for serious injury or death, because, as he well knew, the three conspirators who forced entry into the house were armed with assault rifles. It was only happenstance that no one was killed or seriously injured in the invasion.

### B. History and Characteristics of the Defendant

Johnson has a history of criminal conduct from the time that he was a juvenile into his late twenties. And although the offenses are primarily lower-level crimes, he has twice been sentenced to multi-year prison terms, and they were numerous enough to render him a career offender under §4B1.1(b) of the Sentencing Guidelines. PSR ¶¶ 103-04, 106, and 108.

Johnson grew up in a house in which his father abused alcohol and drugs, and also physically abused Johnson and his brother. *Id.* ¶¶ 116-17. Notably, as to one of Johnson's convictions for possession of methamphetamine precursor with the intent to manufacture, his co-defendant was his father. *Id.* ¶ 103. Johnson also has a history of substance abuse, including reported heavy drinking at the time of the offenses of conviction in this case. *Id.* ¶¶ 58, 127, and 136-40.

After he was released from prison in 2013, Johnson began a relationship with his current wife, Amanda (married in 2018), who appears supportive and stable. She describes Johnson as "caring, helpful, honest, hardworking, and all-around good person" and said that "he has always been open and honest with her about his past, and he has worked hard to overcome his difficult upbringing." *Id.* ¶ 128. Amanda also indicated that Johnson will reside with her after he completes his sentence in this case. *Id.*

### C. The Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide and Just Punishment

As noted above, Johnson has been convicted of a very serious offense, and because of his conviction and his criminal history, he is subject to a substantial guidelines sentence.

To his credit, Johnson agreed to plead guilty and cooperate immediately after he was charged – in fact, his cooperation began before he was indicted, and he provided information to Special Agent Smith knowing that it was going to be used in part to indict him. He has been in custody since his initial arrest nearly three years ago in jail facilities in the Central District of Illinois and in Minnesota (rather than BOP), in large part because he was waiting to testify at both of Hari's trials. His cooperation, including his willingness and preparation to testify at Hari's trials, has been substantial, such that the government intends, before the sentencing hearing in this matter, to file a motion for downward departure under § 5K1.1 and to recommend a downward variance from the guidelines. The government will provide a description of the nature and quality of that cooperation, as well as a recommendation as to the scope of the recommended variance, at that time.

Date: March 15, 2022						Respectfully submitted,

								CHARLES J. KOVATS, JR.
								Acting United States Attorney

								*s/ Timothy C. Rank*

								_____
								TIMOTHY C. RANK
								ALLISON K. ETHEN
								Assistant United States Attorneys